NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEALINK INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>DOCK 7 MATERIALS GROUP, LLC<br><br>Defendant. | Civil Action No. 3:17-cv-04598 (PGS)<br><br>**MEMORANDUM AND ORDER** |

SHERIDAN, U.S.D.J.

This matter is before this Court on Defendant's motion to dismiss for failure to state a claim or, in the alternative, motion for summary judgment (ECF No. 14). At this time, the Court denies the motion for summary judgment since it was prematurely filed. We are at the early stages of this litigation, and little discovery has occurred yet. The motion to dismiss the Compliant for failure to state a claim is discussed below.

I.

**FACTS AND PROCEDURAL HISTORY**

On September 25, 2015, Plaintiff Sealink International, Inc. ("Sealink") entered into an agreement with Defendant Dock 7 Materials Group, LLC ("Dock 7") that it would secure a shipper who had a vessel that would deliver waste plastic to Dock 7's customer Shanghai Tiancheng Resources & Environmental Protection Co., Ltd. ("Shanghai Tiancheng.") (See Amend. Compl. Ex. 1). On that date, Mr. Ted Kaiser, owner of Dock 7, emailed Mr. Rick Han, an employee of Sealink, to request rates for the transport of ten containers by vessel from Los Angeles to Shanghai.

1

(See Amend. Compl. Ex. 2). Dock 7 agreed to pay Sealink $350 per container for its service. Sealink, in turn, found Maersk Line ("Maersk"), a shipping line, to provide the shipping for the containers. The shipping charges of Maersk which included 21 free days before demurrage charges were incurred.[1] After the free time period ran, Dock 7's containers were subject to detention and demurrage charges pursuant to the terms of an Export Booking Agreement. (Id. Ex. 3.) On October 9, 2015, Mr. Kaiser emailed Sealink and requested that Sealink, on behalf of Dock 7, book a shipment of ten containers from Los Angeles to Shanghai. (Ex. 2.) (Amend. Compl. ¶¶13-23).

On October 23, 2015, Sealink, acting as agent on behalf of Dock 7, arranged for the carriage of three of the ten containers with Maersk, and sent Dock 7 an email and documents confirming the booking. (Id. ¶24). Defendant contends that on November 4, 2015 they provided Shanghai Tiancheng with all necessary information as required by the Export Booking Agreement. (Def. Br. pg. 3).

On November 9, 2015, three containers containing plastic scrap were loaded on the MSC LUCIANA, a ship owned or chartered by Maersk. The ship departed the port of Long Beach on the same day. The master bill of lading of the containers, issued by Maersk Line, names Sealink as the shipper and Shanghai Tiancheng as the consignee and notify party. (Exhibit 4). (Amend. Compl. ¶28).

On or about November 10, 2015, Sealink invoiced Dock 7 for the ocean freight for the carriage of Dock 7's Containers on the MSC LUCIANA. (Amend. Compl. Ex. 5).

---

[1] "Free Days" are the number of days a container may remain in a terminal without demurrage charges. According to the contract between Dock 7 and Shanghai Tiancheng, Dock 7 provided Shanghai Tiancheng fourteen (14) free days. (Ex. 1.)

On November 22, 2015, Sealink sent the invoice for the cargo reflected in Invoice 736b, BL 954978659, to Shanghai Tiancheng. On November 27, 2015, Shanghai Tiancheng wired Dock 7 payment in the amount of $5,053.44 to fully satisfy the invoice. On December 1, 2015, Dock 7 wired to Sealink full payment in the amount of $1,050.

On December 2, 2015, Dock 7's containers arrived in Shanghai. Shanghai Tiancheng was listed as the consignee on the bill of lading. (Id. Ex. 4.) In order to pick up a container from a terminal or port, the person picking up the container must possess and present the correct form of bill of lading.

On December 4, 2015, Defendant requested a seaway bill, informing Plaintiff that they usually used that method for release of their shipment. (Amend. Compl. Ex. 6). A seaway bill is different from the bill of lading that was required by the underlying agreements. A seaway bill more closely resembles a receipt, as opposed to a bill of lading, which is like a certificate of ownership. On December 8, 2015, Plaintiff advised Defendant that release was set up with an "Original Bill of Lading" ("OBL"), and that Defendant had informed Plaintiff that they wanted the original bill of lading released at destination when they first planned the shipment. (Id. Ex. 6). Defendant's request for a seaway bill was made after the cargo arrived to destination, therefore the seaway bill could no longer be issued. (Id.) Instead, Plaintiff suggested to Maersk release of an OBL at the destination. (Id.)

On January 27, 2016, Sealink notified Dock 7 via email that the containers remained unclaimed in the terminal in Shanghai. (Amend. Compl. Ex. 6.) Thereafter, the containers incurred demurrage in the sum of $129,864.70 for 446 days (December 23, 2015 - March 3, 2017) (Amend Compl. 43- 45).

On March 3, 2017, Maersk returned the containers, as required by local custom, to the United States on the COLUMBINE MAERSK. (Amend. Compl. Ex. 7). The Containers arrived

3

in the port of Long Beach on March 25, 2017. The return freight was $11,525.61. Maersk demanded Sealink pay for the demurrage and return freight. Sealink paid the demurrage and the return freight costs. (Id. ¶¶46-48).

On April 17, 2017, Sealink invoiced Dock 7 for the demurrage charges and return freight. (*See* Id. Ex. 8-9). Dock 7 did not pay the amount. Plaintiff now seeks reimbursement for those costs from Dock 7. (Id. ¶53).

Plaintiff initially filed a Complaint against Defendant on June 22, 2017. [ECF No. 1]. After the Court granted Defendant's motion to dismiss [ECF No. 10], Plaintiff filed an Amended Complaint [ECF No. 12, Oct. 3, 2017]. In the Amended Complaint, Plaintiff raises the following actions against Defendant: (*COUNT I*) Breach of Contract; (*COUNT II*) Negligent Misrepresentation; (*COUNT III*) Liability under Maritime Law; and (*COUNT IV*) Breach of Agency Relationship. Lastly, Defendant argues that Plaintiff failed to include an indispensable party.

Defendant then filed the motion to dismiss now pending before this Court.

II.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions

4

cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

III.

### *Claim I.   Breach of Contract (Amend. Compl. 54-59)*

In the Amended Complaint, Plaintiff contends that Defendant breached the terms of the Export Booking Agreement, by failing to provide accurate bill of lading instructions. (Amend. Compl. Ex.3). Pursuant to those terms, Defendant should be held liable for the demurrage and transportation costs incurred. (Id. ¶55).

The Export Booking Agreement [Amend. Compl. Ex 3, pg. 3] states:

> 2. **AFTER LOADING:** BL INSTRUCTIONS AND / OR AES ARE DUE ON THE DATES INDICATED ON THE BOOKING ABOVE. IF THE DATES / TIMES ARE MISSING, IT IS THE CUSTOMER'S RESPONSIBILITY TO CONTACT SEALINK INTERNATIONAL INC FOR THE SAME. IT IS THE CUSTOMER'S RESPONSIBILITY TO PROVIDE COMPLETE AND ACCURATE BL INSTRUCTIONS (INCLUDING RELEASE TYPE: EG - HBL OR MBL / SEAWAY OR ORIGINAL) AT THE TIME OF SUBMITTING BL INSTRUCTIONS. ANY INCOMPLETE INSTRUCTIONSOR CHANGES THEREAFTER MAY BE SUBJECT TO ADDITIONAL FEES / PENALTY ETC WHICH WILL BE BILLED BACK TO THE CLIENT.

The Agreement mentions that incomplete instructions or changes may subject the client to additional fees or penalties.

Defendant argues that Sealink is liable for the damages and secondarily, Shanghai Tiancheng should be held liable. (Def. Br. 10-11). Defendant claims the Complaint should be dismissed because Sealink did not sue Shanghai Tiancheng which is an indispensable party. The Court disagrees. The Export Booking Agreement is between Sealink and Dock 7. Sealink merely arranged for shipping plastic scrap from Dock 7's location and to Shanghai Tiancheng. Dock 7 was to provide accurate bill of lading instructions. Allegedly, Dock 7 did not.

Under New Jersey law, the elements of a breach of contract are that: (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and as a result (3) the plaintiff sustained damages. *See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013); *Peck v. Donovan*, 565 F. App'x 66, 69-70 (3d Cir. 2012).

Plaintiff alleges that parties entered into a valid contract, the Export Booking Agreement. The terms of the agreement provide that it is the customer's responsibility to provide complete and accurate bill of lading instructions. Plaintiff alleges that Defendant has failed to do so and as a result, they sustained damages, namely the demurrage and transportation costs.

With regards to this Count, Plaintiff has provided sufficient support to survive a motion to dismiss.

COUNT II.    *Negligent Misrepresentation (¶¶60-65)*

Plaintiff's claim for negligent misrepresentation is based on Dock 7's alleged failure to provide accurate information within the bill of lading or changing the bill of lading to a Sealink bill.  Plaintiff argues that Shanghai Tiancheng was not the only party relying on the information provided but that Plaintiff also relied on Dock 7's bill of lading instructions to convey accurate information. (Pl. Opp. pg. 11). According to Li Han, Plaintiff's employee, Shanghai Tianchang, never picked up the bill of lading.  Conversely, Dock 7 argues that even if Shanghai Tiancheng was not provided with accurate or incomplete bill of lading instructions, it was Sealink who provided those instructions, therefore if there was a mistake they should be held responsible.

A claim for negligent misrepresentation "requires the plaintiff to prove that the putative tortfeasor breached a duty of care owed to plaintiff and that plaintiff suffered damages proximately caused by that breach." *Highlands Ins. Co. v. Hobbs Group*, 373 F.3d 347, 351 (3d Cir. 2004) (citation omitted). "The elements of negligent misrepresentation are essentially the same as those of common law fraud except negligent misrepresentation does not require scienter. Negligent misrepresentation is . . . an incorrect statement, negligently made and justifiably relied on, and may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance." *Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 517 (D.N.J. 2009) (citation omitted).

To prove a claim of negligent misrepresentation under New Jersey law, the plaintiff must demonstrate that "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." *Id.* at 518 (quoting *McCall v. Metropolitan Life Ins.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996).

"Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. Supr. 2002).

The Court finds that Plaintiff meets the requirements for a claim of negligent misrepresentation at this stage of litigation. At a later date, most likely at summary judgment, the Court will examine if the economic loss doctrine precludes one of these causes of action.

<u>COUNT III.   Liability under Maritime Law (¶¶66-71)</u>

Plaintiff alleges that Dock 7 is the shipper and is responsible for demurrage. (Pl. Opp. pg. 12). Parties agree that the shipper is liable for demurrage, however, they disagree on who the shipper is in this case. Plaintiff argues that Dock 7 is the shipper under maritime law. Defendant argues that the bill of lading determines which party is the shipper for purposes of establishing liability for certain fees. Notably, defense counsel has argued the "not me" defense. First, Dock 7 argues that Sealink is the "shipper" under the bill of lading and not Dock 7. Secondly, defense counsel points out that Dock 7 is not identified as the shipper anywhere, therefore cannot be found liable. The Court disagrees.

"The bill of lading is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers" *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982). Nevertheless, the "pattern and presumption" that the party identified as "shipper" on the bills of lading is the party that bears liability "can be overcome by statute, by contractual provisions, or by the parties' course of conduct." *Mediterranean Shipping Co., S.A. v. Best Tire Recycling, Inc.*, 848 F.3d 50, 53 (1st Cir. 2017). Even if this Court agreed with Defendant's argument that the shipper named on the bill is liable, it could still find both Shanghai Tiancheng and Dock 7 liable for the charges. (*See Id.; See also EIMSKIP v. Atl. Fish Mkt., Inc.*, 417 F.3d 72 (1st Cir. 2005) (finding both the shipper named

8

on the bill of lading and the party not named on it liable to the carrier.) In *EIMSKIP*, the court found that under maritime law "[t]wo parties may each make themselves liable to a third party for payment of the same freight on a single shipment--one by a contract reflected in part by the bill of lading and the other by explicit promises and course of conduct independent of the bill of lading." *EIMSKIP*, 417 F.3d at 76).

The issue is whether this Count is duplicative of the breach of contract count. At its best, this count alerts the Defendant that under maritime jurisprudence Dock 7 may be liable. To that extent, the claim may proceed subject to further refinement as the litigation proceeds. Plaintiff has submitted sufficient evidence to support that, although not listed on the bill of lading as the "shipper," Dock 7 may still be found liable. Therefore, this count will not be dismissed at this time.

*COUNT IV. Breach of Agency Relationship (¶¶72-76)*

Plaintiff argues that Defendant's conduct constituted a breach of the agency relationship. Plaintiff argues that non-vessel operator common carriers (NVOCCs) like Sealink act as agents for cargo owners when contracting for carriage with an ocean carrier. Dock 7 as the principal, hired Sealink as its authorized agent to arrange for the carriage of the Dock 7's containers, giving them the authority to arrange for the carriage of the containers. The charges incurred were caused by the conduct of Dock 7 and a third party.

Defendant argues that the language of this count is unclear, and that Dock 7 did not have specific legal obligations or an agency relationship with Plaintiff. The Court disagrees. Generally, "the NVOCC is a common carrier with respect to the shippers who employ its services, but with respect to the vessel and her owner, the NVOCC is deemed an agent of the shipper." *Glyphics Media, Inc. v. M.V. "Conti Sing."*, 2003 U.S. Dist. LEXIS 4387, *22 (S.D.N.Y. March 20, 2003) (citation omitted).

9

Plaintiff has sufficiently alleged that a breach of an agency relationship occurred when Dock 7 and Shanghai Tiancheng abandoned the containers.

Defendant requests that this Court find Shanghai Tiancheng to be an indispensable party. (Def. Br. pg. 18). Plaintiff argues that Shanghai Tiancheng is not an indispensable party, and the Court could accord complete relief without the party. (Pl. Opp. pg.14-15).

Fed. R. Civ. P. 19(a)(1) states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The Court finds that joinder of Shanghai Tiancheng is not feasible at this time. At oral argument counsel noted that Shanghai Tiancheng is not subject to service. The rule requires that the indispensable party must be subject to service. As such, the motion to dismiss for failure to join Shanghai Tiancheng for failure to join is denied.

Lastly, Defendant argues entitlement to attorney's fees pursuant to Fed. R. Civ. P. 11(b) arguing that Plaintiff's counsel was aware of the baselessness of the allegations and claims in the Amended Complaint, proceeded anyway, and therefore should be sanctioned. (Def. Br. pg. 19).

Rule 11 requires an attorney to certify to the Court upon the submission of a "pleading, written motion, or other paper" that

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Plaintiff's claims were pled in good faith and are found not to be baseless. Therefore, Defendant's request is denied.

## ORDER

This matter having been opened to the court on Defendant's Motion to Dismiss and/or Summary Judgment. [ECF No. 14]; and the Court having fully considered the submissions in support thereof, and any opposition thereto; and having considered the arguments of counsel, the additional arguments and evidence set forth at the December 4, 2017 hearing, and for the reasons set forth above;

IT IS on this 13th day of December, 2017,

**ORDERED** that Defendant's Motion to Dismiss and/or summary judgment and/or [ECF No. 14] is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.